IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MM STEEL, LP<br>　　　Plaintiff,<br><br>v.<br><br>RELIANCE STEEL & ALUMINUM CO.,<br>CHAPEL STEEL CORP., AMERICAN<br>ALLOY STEEL, INC., ARTHUR J.<br>MOORE, JSW STEEL (USA) INC.,<br>NUCOR CORP. & SSAB ENTERPRISES,<br>LLC D/B/A SSAB AMERICAS,<br>　　　Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 4:12-cv-01227<br><br><br>JURY DEMANDED |

**DEFENDANT JSW STEEL (USA) INC.'S MOTION TO DISMISS
AND BRIEF IN SUPPORT**

TO THE HONORABLE JUDGE OF SAID COURT:

Defendant JSW Steel (USA) Inc. ("JSW") files this motion to dismiss the Original Complaint of Plaintiff MM Steel, LP ("MM Steel") for failure to state a claim upon which relief can be granted, as authorized by Federal Rule of Civil Procedure 12(b)(6).

**SUMMARY OF THE ARGUMENT**

This Court should dismiss MM Steel's antitrust claim against JSW (Count 1) for failure to state a claim under Rule 12(b)(6). MM Steel's Original Complaint contains *no facts* showing any communications between JSW and Nucor, SSAB, or Reliance/Chapel and *no facts* demonstrating that an agreement was reached between JSW and any of the other Defendants. Moreover, MM Steel does not allege any facts establishing that JSW had knowledge about the unilateral actions being taken by Nucor and SSAB or the alleged "horizontal" agreement between Reliance/Chapel and its competitor, American Alloy. And while MM Steel alleges that it could not buy steel from JSW, it fails to plead that it had no other sources of supply or that it

sought unsuccessfully to obtain product from those other sources. Therefore, MM Steel fails to state an antitrust claim under Rule 12(b)(6).

Additionally, this Court should dismiss MM Steel's common law claims for failure to state a claim. MM Steel's breach of contract claim (Count 2) fails as a matter of law, because its alleged contract with JSW is unenforceable as an agreement to agree. MM Steel's claims of tortious interference (Counts 3 and 4) fail as a matter of law because JSW cannot tortiously interfere with its own contract and there is no allegation of JSW's intent to interfere. MM Steel's business disparagement claim (Count 5) against JSW fails because MM Steel does not allege any facts supporting a claim that JSW published disparaging words about MM Steel to anyone. And MM Steel's conspiracy claim (Count 6) should be dismissed, because MM Steel fails to sufficiently allege any agreement or meeting of the minds between JSW and any other Defendant or that JSW committed an unlawful act.

## NATURE AND STATE OF THE PROCEEDING

On April 19, 2012, MM Steel filed Plaintiff's Original Complaint alleging that the following Defendants engaged in a group boycott that is *per se* illegal under Section 1 of the Sherman Act, 15 U.S.C. § 1. As described in MM Steel's Original Complaint, the Defendants can be categorized as:

- **The Metal Service Center Defendants:**
    - Reliance Steel & Aluminum Co. ("Reliance"),
    - Chapel Steel Corp. ("Chapel"),
    - American Alloy Steel, Inc. ("American Alloy"),
        - Arthur J. Moore—the president and owner of American Alloy,

- **The Steel Producer Defendants:**
    - JSW Steel (USA) Inc. ("JSW"),
    - Nucor Corp. ("Nucor"), and
    - SSAB Enterprises, LLC d/b/a SSAB Americas ("SSAB").

MM also asserts common law claims for tortious interference with existing and prospective

contracts, business disparagement, conspiracy, and (against JSW only) breach of contract.

All of MM Steel's claims against JSW, however, should be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

## STATEMENT OF FACTS

JSW is only one of many steel mills supplying the Gulf Coast region with steel. JSW's customers consist of distributors or service centers, shipyards, oilfield fabricators, heavy equipment producers, machinery makers, and other end-users. And the Metal Service Center Defendants are only a few of JSW's customers. As MM Steel admits, "[t]he Gulf Coast region is, as one can imagine given the energy industry, the Houston port, and ancillary businesses, a large market for buying and selling steel." (Plaintiff's Original Complaint at ¶ 51.)

MM Steel alleges that it entered into an agreement with JSW, but admits in the complaint that there was only an agreement to agree—"a minimum of 500 tons per month average at a price as agreed upon by both parties." (Plaintiff's Original Complaint at ¶ 62); *see also* paragraph 1 of a true and correct copy of a document, dated effective August 2, 2011, attached hereto as Exhibit A and incorporated by reference herein as if fully set forth.

MM Steel alleges it tried to purchase steel from JSW in mid-October 2011. (Plaintiff's Original Complaint at ¶ 62.) MM Steel alleges specifically the following:

- However, at the meeting in October 2011, JSW's President, Mike Fitch, and Rajesh Khosla, a JSW salesman, told Plaintiff MM Steel that JSW would no longer honor its contract. This was because, according to Fitch, multiple persons had made "unsolicited" visits to JSW to disparage Hume, Schultz, and MM Steel. Because of those unsolicited visits, JSW cut off supply to MM Steel. Hume told Fitch that he was effectively putting MM Steel out of business. (Plaintiff's Original Complaint at ¶ 63); and

- When Hume told Fitch that he (Hume) sensed Fitch and JSW had been threatened, Fitch's only response was this: "I understand the gravity of the situation," but "I have to do what's best for my business." The end result was that despite an existing contract and an established relationship with

3

Hume and Schultz, JSW was going to enter into a conspiracy to shut down MM Steel, not to mention breach its contract. Plaintiff has recently learned that Defendants American Alloy and Moore threatened JSW. (Plaintiff's Original Complaint at ¶ 64.)

The above two paragraphs contain MM Steel's only factual allegations against JSW and are insufficient to state an antitrust claim under Section 1 of the Sherman Act, much less support any of the asserted state law claims.

## ISSUE PRESENTED AND STANDARD OF REVIEW

The issues before this Court are: (1) whether an antitrust claim should be dismissed for failure to state a claim under Rule 12(b)(6) when the plaintiff has failed to adequately allege: (a) an illegal agreement; (b) a relevant market; (c) market power; (d) adverse market impact; (e) antitrust injury; or (f) injury-in-fact; and (2) whether the remaining state law claims should also be dismissed under 28 U.S.C. § 1367, because the federal antitrust claim has been dismissed, or under 12(b)(6) for failure to state a claim.

This Court has authority to dismiss a claim under Rule 12(b)(6) if the complaint provides only labels and conclusions or a formulaic recitation of the elements and fails to state factual allegations showing that the right to relief rises "above the speculative level." See *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## ARGUMENT & AUTHORITIES

**I.     MM Steel's antitrust claim against JSW should be dismissed under Rule 12(b)(6).**

    **A.     MM Steel failed to adequately plead a *per se* violation of Section 1 of the Sherman Act because it failed to adequately plead the existence of a horizontal group boycott.**

On this point, JSW adopts the authorities stated in the briefs of SSAB and Nucor, in support of the conclusions that MM Steel's Original Complaint contains:

- No facts showing any communications between JSW and the other Steel Producer Defendants, Nucor and SSAB, or any other steel mill regarding MM Steel;

- No facts establishing any knowledge on JSW's part of the unilateral actions being taken by the other Steel Producer Defendants; and

- No facts demonstrating any knowledge on JSW's part of the alleged "horizontal" agreement between the Metal Service Center Defendants, Reliance/Chapel and its competitor, American Alloy.

Like SSAB and Nucor, JSW is merely a manufacturer of steel products and does not compete with MM Steel. Therefore, any alleged agreement between JSW and the Metal Service Center Defendants would be a vertical agreement, subject to the rule of reason analysis, and not a horizontal one. Accordingly, MM Steel's claim of a *per se* illegal group boycott against JSW should be dismissed.

**B. The Complaint fails to state a claim against JSW relating to any vertical agreements with the Metal Service Center Defendants.**

On this point, JSW adopts the authorities stated in the briefs of SSAB and Nucor, in support of the conclusions that MM Steel has failed to:

- Allege that any vertical agreement exists—instead pleading only the existence of a horizontal group boycott;

- Plead any facts showing communications between JSW and Reliance/Chapel; or

- Make any allegations demonstrating that an agreement was reached between JSW and any of the Metal Service Center Defendants despite the alleged threat from American Alloy.

Thus, even accepting all of the allegations against JSW as true, MM Steel has alleged only that JSW made a reasonable, independent business decision not to sell to MM Steel. As such, this Court should dismiss MM Steel's claim against JSW for an antitrust violation.

**C. MM Steel's pleading fails to allege adequately a rule of reason violation of Section 1 of the Sherman Act by failing to allege a relevant market, market power, or adverse market impact.**

Even if this Court finds that MM Steel's Complaint adequately alleges a vertical agreement between JSW and any of the Metal Service Center Defendants, any claim based on

such an agreement is fatally defective for not alleging that the alleged agreement had a significant impact on competition in the relevant market rather than just an impact on an individual company. Again, JSW adopts the reasoning and authorities cited in the briefs of Nucor and SSAB, which convincingly demonstrate that MM Steel has failed to:

- Define a relevant market;[1]
- Plausibly allege the Defendants' market power; or
- Plead any facts showing alleged harm to overall competition in the relevant market.

For the reasons described above, this Court should dismiss Count 1 of MM Steel's Complaint for failure to state an antitrust claim.

**D. This Court should dismiss MM Steel's antitrust claim for failure to allege that MM Steel had no other sources of steel supply.**

By failing to plead that it had no other sources of supply besides the Steel Producer Defendants and that it sought unsuccessfully to obtain product from those other sources of supply, MM Steel fails to plead injury-in-fact, antitrust injury, or injury to competition.

The antitrust laws are designed to protect competition, not individual competitors. *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488 (1977). In this case, MM Steel admits in its complaint that there is a "large market for buying and selling steel," as one would expect with a major port like Houston, which receives shipments from around the world. MM Steel never alleges that it was foreclosed from obtaining steel from the undoubtedly numerous sources of supply; MM Steel alleges only that it was unable, after the issuance of a temporary

---

[1] "The essential test for ascertaining the relevant product market involves the identification of those products or services that are either (1) identical to or (2) available substitutes for the defendant's product or service . . . reasonable interchangeability may be gauged by (1) the product uses, *i.e.*, whether the substitute products or services can perform the same function, and/or (2) consumer response (cross-elasticity); that is, consumer sensitivity to price levels at which they elect substitutes for the defendant's product or service." *Cupp v. Alberto-Culver USA, Inc.*, 310 F. Supp. 2d 963, 970 (W.D. Tenn. 2004) (quoting *White & White, Inc. v. Am. Hosp. Supply Corp.*, 723 F.2d 495, 500 (6th Cir. 1983)).

injunction against it, to persuade JSW and two other suppliers to sell it steel. That type of individualized dispute does not rise to the level of an antitrust violation.

An antitrust plaintiff in this type of case fails in three different ways if the plaintiff does not allege that it sought but had no other sources of supply.

To properly state a claim under Section 4 of the Clayton Act, MM Steel must plead sufficient facts of an "actual injury" that rise above a mere speculative level. *See J. Truett Payne Co. v. Chrysler Motors Corp.*, 451 U.S. 557, 562 (1981). "[T]o obtain damages for an antitrust violation, a plaintiff must establish, among other things, the fact of injury: that is, the plaintiff must 'establish that such violation proximately caused injury to his business . . . .'" *Southwest Sheet Metal Works v. Semco Mfg.*, 788 F.2d 1144, 1146 (5th Cir. 1986). An allegation of an antitrust "violation does not mean that a disfavored purchaser has been actually 'injured' within the meaning of § 4." *See J. Truett Payne Co. v. Chrysler Motors Corp.*, 451 U.S. at 562. When an agreement between competitors places "no impediments in [the plaintiff's] path to the marketplace," no injury-in-fact exists and the plaintiff's claim under Section 4 of the Clayton Act should be dismissed. *See, e.g., Eon Labs Mfg. Inc. v. Watson Pharmaceuticals, Inc.*, 164 F. Supp. 2d 350, 357 (S.D.N.Y. 2001) (dismissing claim where plaintiff failed to allege that it was prevented from bringing its own product to the market). As this Court stated in *El Aguila Food Products Inc. v. Gruma Corporation,* 301 F. Supp.2d 612, 621 (S.D. Tex. 2003), *aff'd* 131 Fed. Appx. 450, 2005 WL 1156090 (5th Cir. 2005), where a plaintiff refuses to negotiate with others, the plaintiff's case "suffers a self-inflicted wound."[2]

---

[2] The Fifth Circuit affirmed, also relying in part on the plaintiffs' refusal to pursue available opportunities. *Cf. TCA Bldg. Co. v. NW Resources Co.*, 873 F. Supp. 29, 40 (S.D. Tex. 1995) ("Plaintiff has not even alleged that acquiring such equipment is not economically feasible, nor has Plaintiff presented any argument at all on the issue of infeasibility. The Court therefore finds as a matter of law that Defendants' downstream handling facilities are not essential and that Defendants' use of them does not violate antitrust law.").

An antitrust claim also requires a showing of an "antitrust injury," that is, "injury of the type the antitrust laws were intended to prevent and that flows from that which makes the defendant's acts unlawful." *Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334 (1990).[3] As stated in *Ginzburg v. Memorial Healthcare Systems, Inc.*, 993 F. Supp. 998 (S.D. Tex. 1998),

> because "the purpose of antitrust law is the promotion of consumer welfare," the court must analyze the antitrust injury question from the perspective of the consumer. Thus, in order to show that he suffered an antitrust injury, "an antitrust plaintiff must prove that the challenged conduct affected the prices, quantity or quality of goods or services and not just his own welfare."

993 F. Supp. at 1015 (citations omitted). Where a plaintiff is merely one of many distributors, its failure to succeed does not necessarily rise to the level of an antitrust injury. *E.g., Matthews v. Lancaster Gen. Hosp.*, 87 F.3d 624, 641 (3d Cir. 1996) ("evidence does not support the existence of an antitrust injury resulting from a restriction [on the plaintiff's services] because [the same] services are still readily available to consumers in the [relevant] area from a large and ever-increasing number of providers"); *see also Streamcast Networks, Inc. v. Skype Technologies, S.A.*, 547 F. Supp. 2d 1086, 1097–98 (C.D. Cal. 2007) (dismissing a plaintiff's antitrust claims for failure to allege a cognizable antitrust injury when the alleged antitrust violation "did not result in higher prices or decreased output for the consuming public [because the] services remained available to a potentially infinite number of users worldwide" from many other providers).

A plaintiff's failure to allege its unsuccessful resort to alternative sources of supply is also a failure to allege a proper relevant market and market impact under the Rule of Reason. For example, in *E&L Consulting, Ltd. v. Doman Industries*, the court dismissed the plaintiffs'

---

[3] Even allegations of a per se violation of Section 1 of the Sherman Act require a showing of an antitrust injury. *See id.* at 344.

antitrust claims for failure to allege the unavailability of product substitutes. 360 F. Supp. 2d 465, 473, 477 (E.D.N.Y. 2005), *affirmed*, 472 F.3d 23 (2d Cir. 2006). The court reasoned that "[w]ith respect to product market, 'if a complaint fails to allege facts regarding substitute products, to distinguish among apparently comparable products, or to allege other pertinent facts related to cross-elasticity of demand . . . a court may grant a Rule 12(b)(6) motion.'" *Id.* at 472 (quoting *Beyer Farms, Inc. v. Elmhurst Dairy, Inc.*, 142 F. Supp. 2d 296, 303 (E.D.N.Y. 2001)). *See also, e.g., L.G. Motorsports, Inc. v. NGMCO, Inc.*, No. 4:11CV112, 2012 U.S. Dist. LEXIS 29594, at *15–16 (E.D. Tex. Mar. 6, 2012) (dismissing federal antitrust claims when the plaintiff failed "to show that harm to competition in the market place has occurred"). Absent an allegation that MM Steel sought unsuccessfully to purchase from alternative sources of supply, MM Steel cannot even begin to plausibly claim any adverse market impact.

## II. The Complaint fails to state a valid state law claim against JSW.

### A. MM Steel's breach of contract claim fails as a matter of law, because its alleged contract with JSW is unenforceable as an agreement to agree.

This Court has authority to dismiss MM Steel's breach of contract claim under Rule 12(b)(6). "Because contract construction is generally decided as a matter of law, interpretation of a contract is generally suitable for disposition on a motion to dismiss for failure to state a claim upon which relief can be granted." *Geske v. Wells Fargo Bank, Nat'l Ass'n*, No. 3:11-CV-3337-L, 2012 U.S. Dist. LEXIS 51500, at *10 (N.D. Tex. Apr. 12, 2012). This Court need not accept as true MM Steel's legal interpretation of the alleged contract. *See id.* at *9.

Here, this Court should dismiss MM Steel's breach of contract claim, because the alleged contract between MM Steel and JSW is merely an unenforceable agreement to agree. Specifically, the alleged contract states, "MM Steel is *only* obligated to buy *if both parties agree on pricing*."

9

In Texas, "[i]t is well settled law that when an agreement leaves material matters open for future adjustment and agreement that never occur, it is not binding upon the parties and merely constitutes an agreement to agree." *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 846 (Tex. 2000). Courts have dismissed breach of contract claims under Rule 12(b)6) as unenforceable agreements to agree. *See, e.g., Trianco, LLC v. IBM*, 271 Fed. App'x 198, 201–202 (3d Cir. 2008) (affirming the district court's dismissal of the breach of contract claim because the contract, which was "subject to the parties' future agreement on its terms, conditions, and pricing, [was] merely an agreement to agree").

Accordingly, this Court should dismiss Count 2 of MM Steel's Original Complaint against JSW for alleged breach of contract for failure to state a claim under Rule 12(b)(6).

**B.  MM Steel's claims of tortious interference with contracts fail as a matter of law because JSW cannot tortiously interfere with its own contract.**

It is a fundamental principle that "the person who induces the breach cannot be a contracting party." *See id.* at 457 (quoting *Holloway v. Skinner*, 898 S.W.2d 793, 796 (Tex. 1995)). Because JSW cannot interfere with its own contract, this Court should dismiss with prejudice Count 3 of MM Steel's Original Complaint as it applies to JSW and its alleged agreement with MM Steel.[4]

**C.  MM Steel's tortious interference with prospective contracts claim should be dismissed because there is no allegation of JSW's intent to interfere.**

At no point does MM Steel allege any "conscious desire" by JSW to interfere with MM Steel's potential relationships with SSAB, Nucor, or other unknown third parties. Therefore, this Court should dismiss Count 4 of MM Steel's Original Complaint.

---

[4] MM Steel fails to allege a claim that JSW knowingly interfered with any other existing contract. Plaintiff does state that "North Shore is also concerned about losing JSW's support because JSW is one of Green Bayou's biggest vendors," (Plaintiff's Original Complaint at 85), but that statement is wholly insufficient to allege a tortious interference claim.

D.  **This Court should dismiss MM Steel's business disparagement claim for failure to allege any disparagement by JSW.**

MM Steel fails to allege any facts supporting a claim that JSW published disparaging words about MM Steel to anyone—not the Metal Service Center Defendants; not the Steel Producer Defendants; and not any third parties. The disparagement claim accordingly fails. *See Forbes, Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 170 (Tex. 2003) (the elements of a business disparagement claim are: (1) the defendant published disparaging words about the plaintiff's economic interests with malice and without privilege; (2) the words were false; and (3) the publication caused special damages).

E.  **MM Steel's conspiracy claim should be dismissed for the same reasons as its antitrust claims.**

As more fully explained above, MM Steel fails to sufficiently allege any agreement or meeting of the minds between JSW and any other Defendant. Furthermore, MM Steel fails to establish any unlawful act committed by JSW as required under Texas law to sustain a civil conspiracy claim. *See Puente v. Chi. Ins. Co.*, 2010 U.S. Dist. LEXIS 91895, *46–47 (S.D. Tex. May 20, 2010) ("[Wi]thout independent tortious conduct, there is no actionable civil conspiracy claim.").

## CONCLUSION

For the reasons stated above, JSW respectfully requests this Court to dismiss MM Steel's Original Complaint under Federal Rule of Civil Procedure 12(b)(6).

Dated: June 8, 2012

                                        Respectfully submitted,

                                        */s /Hunter M. Barrow*
                                        Hunter M. Barrow
                                        Attorney-in-Charge
                                        State Bar No. 24025240
                                        Federal Bar No. 25828
                                        Wade A. Johnson
                                        State Bar No. 24062197
                                        Federal Bar No. 1055556
                                        333 Clay Street, Suite 3300
                                        Houston, TX 77002
                                        Phone:    713.654-8111
                                        Fax:       713.654.1871
                                        E-mail:    hunter.barrow@tklaw.com
                                                             wade.johnson@tklaw.com

OF COUNSEL:

**THOMPSON & KNIGHT LLP**
333 Clay Street, Suite 3300
Houston, Texas 77002
Phone: 713/654-8111
Fax: 713/654-1871

OF COUNSEL:

**THOMPSON & KNIGHT LLP**
Gregory S. C. Huffman
State Bar No. 10191500
Federal ID No. 9889
One Arts Plaza
1722 Routh Street, Suite 1500
Dallas, Texas 75201-2533
Phone: 214-969-1700
Fax: 214-969-1751
E-mail: gregory.huffman@tklaw.com

                                        **ATTORNEYS FOR DEFENDANT**
                                        **JSW STEEL (USA) INC.**

## CERTIFICATE OF SERVICE

      I hereby certify that on the 8th day of June, 2012, a true and correct copy of the above and foregoing *Motion to Dismiss* has been served via the Court's ECF filing system on all registered counsel of record to the following counsel of record:

David P. Gersch
Arnold & Porter LLP
555 Twelfth Street NW
Washington, DC 20004

Donna E. Patterson
Arnold & Porter LLP
555 Twelfth Street NW
Washington, DC 20004

Jason Ewart
Arnold & Porter LLP
555 Twelfth Street NW
Washington, DC 20004

Michael D Thorpe
Arnold & Porter LLP
555 Twelfth Street NW
Washington, DC 20004

Robert J. Katerberg
Arnold & Porter LLP
555 Twelfth Street NW
Washington, DC 20004

Mary B. Balhoff
Fulbright and Jaworski LLP
1301 McKinney St., Suite 5100
Houston, Texas 77010

Christopher P. Hanslik
Boyar & Miller PC
4265 San Felipe, Suite 2100
Houston, Texas 77027

William R. Pakalka
Fulbright and Jaworski LLP
1301 McKinney St., Suite 5100
Houston, Texas 77010

Sara B. Richey
Boyar & Miller PC
4265 San Felipe, Suite 2100
Houston, Texas 77027

Anne M. Rodgers
Fulbright and Jaworski LLP
1301 McKinney St., Suite 5100
Houston, Texas 77010

Olivia Howe
Vinson and Elkins
1001 Fannin St., Suite 2500
Houston, Texas 77002

Jeffrey S. Johnston
Vinson and Elkins
1001 Fannin St., Suite 2500
Houston, Texas 77002

Karl S. Stern
Vinson and Elkins
1001 Fannin St., Suite 2500
Houston, Texas 77002

Mo Taherzadeh
Taherzadeh Law Firm
1001 West Loop South, Suite 700
Houston, Texas 77027

R. Tate Young
Attorney at Law
1001 West Loop South, Suite 700
Houston, Texas 77027

Walter M. Berger
Winston & Strawn LLP
1111 Louisiana Street, 25TH Floor
Houston, Texas  77002

Steven R. Selsberg
Sidley Austin LLP
600 Travis Street, Suite 3100
Houston, Texas  77002

/s/ *Hunter M. Barrow*
Hunter M. Barrow