UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| MM STEEL, LP, *et al*, § <br> § <br> Plaintiffs, § <br> VS. §    CIVIL ACTION NO. 4:12-CV-1227 <br> § <br> RELIANCE STEEL & ALUMINUM CO., *et al*, § <br> § <br> Defendants. § | |

**MEMORANDUM OPINION AND ORDER**

**I.     INTRODUCTION**

Before the Court are a number of motions in limine by the defendants (Docket Nos. 327, 330, 331, 332, 333, 344 and 347) and by the plaintiff, MM Steel (Docket No. 328). Also before the Court are the responses of the parties to the various motions. Having carefully reviewed the parties' submissions, the record and the applicable law, the Court makes the following rulings.[1]

**II.    DEFENDANTS' MOTIONS**

    **A.     Exclusion of Email Evidence from Non-Party ArcelorMittal**

The defendants ask the Court to exclude as hearsay two email changes amongst employees of non-party ArcelorMittal—the August 2, 2012 email (Docket No. 327, Ex. 1) and the Sergovic email (Docket No. 333, Ex. 2). MM Steel argues that both emails are admissible as business records under Rule 803(6) and as statements by a coconspirator under Rule 801(d)(2)(E). In the alternative, MM Steel argues the emails should be admitted under the Rule 807 residual exception.

---

[1] At docket call on December 2, 2013, the parties informed the Court of the motions they believed required resolution prior to trial. Only those motions are the subject of this order.

### 1. Business Record Exception

To bring a record within the ambit of FRE 803(6) requires proof that the record was made in the regular practice of the business. Fed. R. Evid. 803(6)(C). "[T]he rationale underlying this exception to the rule against hearsay is that the inherent reliability of business records is 'supplied by systematic checking, by regularity and continuity which produce habits of precision, by actual experience of business in relying upon them, or by a duty to make an accurate record as part of a continuing job or occupation.'" *United States v. Wells*, 262 F.3d 455, 462 (5th Cir. 2001) (quoting Fed. R. Evid. 803(6), Notes of Advisory Committee). "A party seeking to introduce an email made by an employee [of a party] about a business matter under the hearsay exception under Rule 803(6) must show that the employer imposed a business duty to make and maintain such a record." *Canatxx Gas Storage Ltd. v. Silverhawk Capital Partners, LLC*, 2008 WL 1999234, at *12 (S.D. Tex. May 8, 2008). Because there is no evidence that ArcelorMittal imposed a duty on its employees to send the types of emails at issue, and there is no evidence that sending these types of emails were regular practices of ArcelorMittal, neither email is admissible under Rule 803(6).

Contrary to MM Steel's suggestion, the emails do not become admissible simply by way of a general averment in a business records affidavit which covers thousands of pages of documents. *See Rogers v. Oregon Trail Elec. Consumers Co-op., Inc.*, 2012 WL 1635127, at *10 (D. Or. May 8, 2012) ("Holding emails to some standard under the business records hearsay exception, as opposed to broadly accepting them as admissible business records, is the best approach."). Although the Fifth Circuit has said that a "proper foundation is laid for business records simply by an affidavit that attests to the requisite elements of FRE 803(6)," it cannot be overlooked that the court was considering the exception as applied to a prototypical business

record—purchase logs. *United States v. Towns*, 718 F.3d 404, 408-09 (5th Cir. 2013). Here, however, we are dealing with emails among colleagues. There is no evidence of and the affidavit does not suggest that writing the emails, i.e. making a record of the subject matter discussed in the emails, was a regular practice of ArcelorMittal's business. That deficiency renders the emails inadmissible as business records.

### 2. Statement of a Coconspirator Exception

Rule 801(d)(2)(E) requires the proponent of admittance of a statement to "prove by a preponderance of the evidence (1) the existence of the conspiracy, (2) the statement was made by a co-conspirator of the party, (3) the statement was made during the course of the conspiracy, and (4) the statement was made in furtherance of the conspiracy." *United States v. Ebron*, 683 F.3d 105, 135 (5th Cir. 2012) (quoting *United States v. Cornett*, 195 F.3d 776, 782 (5th Cir. 1999)). Although the statement itself is considered in ascertaining whether a conspiracy existed, it "cannot by itself establish the existence of the conspiracy or participation in it. There must be independent evidence establishing the conspiracy." *United States v. Nelson*, 732 F.3d 504, 516 (5th Cir. 2013) (internal quotation omitted).

Considering these principles, the Sergovic email is admissible as the statement of a coconspirator. As evidenced by the order denying summary judgment, the Court is of the opinion that there is sufficient evidence to find the existence of a conspiracy, and the ultimate determination must be made by the factfinder. There is also evidence that ArcelorMittal was a coconspirator. The Sergovic email describes the pressure the distributors put to bear on the mill. It also discusses at least one option the mill planned to use to achieve the aim of the conspiracy ("If we quote…we quote high!"). Furthermore, it appears ArcelorMittal actually implemented the strategy by quoting MM Steel prices twenty percent above the market rate. *See* Docket No.

366, Ex. 8. The statement was made during the course of the conspiracy which allegedly began on September 1, 2010, and continued until MM Steel closed in August 2013. Finally, the email chain cannot reasonably be described as idle chatter, but rather evidences furtherance of the conspiracy. *See United States v. Martinez-Medina*, 279 F.3d 105, 117 (1st Cir. 2002). As previously noted, the participants discussed how they were going to handle requests for quotes by MM Steel in light of the alleged conspiracy to drive it from the market. The Sergovic email is admissible as a statement of a coconspirator and the motion to exclude it is denied.[2]

The August 2 email is not admissible as a statement of a coconspirator. It is clear that the email was not in furtherance of the conspiracy; instead, it "merely describe[ed] to [the email recipient] what was occurring or what had occurred." *Fratta v. Quarterman*, 536 F.3d 485, 504 (5th Cir. 2008) (internal quotation omitted).

### 3. Residual Exception

Rule 807 requires, among other things, that the hearsay statement be "more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts." Fed. R. Evid. 807(a)(3). The August 2 email is being offered to establish that "the defendant service centers conspired with the defendant mills to boycott MM Steel." Because there is sufficient evidence to establish that a conspiracy existed (indeed, the Sergovic email is arguably more persuasive on this point than August 2 email), the motion to exclude the August 2 email as hearsay is granted.

### B. Exclusion of Audio Recording of Byron Cooper

The defendants ask the Court to exclude the surreptitious recording of statements by Byron Cooper as hearsay. MM Steel argues that the recording is admissible as a past recollection

---

[2] Because the Sergovic email is admissible under FRE 801(d)(2)(E), the Court does not consider whether it would otherwise be admissible under FRE 807.

recorded, for purposes of impeachment, and as a statement of a coconspirator. The Court agrees with MM Steel that the recording is admissible as a past recollection recorded and for purposes of impeachment. However, it is not admissible as a statement of a coconspirator.

If Mr. Cooper is called as a witness at trial, to the extent that he claims that he does not remember making the statements in the recording, the Court will permit the recording to be played to the jury as a past recollection recorded. *See United States v. Sollars*, 979 F.2d 1294, 1298 (8th Cir. 1992); *see also United States v. Mayhew*, 2011 WL 601546, at *2 (D. Utah February 11, 2011). To the extent Mr. Cooper denies making the statements in question, the Court will permit the recording to be played to the jury for impeachment purposes.[3] Fed. R. Evid. 607, 613. Because the statements in question were clearly not in furtherance of the alleged conspiracy, they cannot be admitted under the coconspirator exception. However, because MM Steel has properly invoked FRE 803(5) and the impeachment rule, the defendants' motion to have the recording excluded as hearsay is denied.

### C. Exclusion of Internal Antitrust Compliance Policies

Defendants Nucor, SSAB and Reliance ask the Court to bar MM Steel from introducing evidence of or referring to their internal antitrust compliance policies. The Court is of the opinion that the various compliance policies "present legal conclusions as to the scope and meaning of the Sherman Act that would undermine the Court's role as the jury's sole source of law applicable to this case" and also "present a significant risk that the jury will be misled as to the Sherman Act's proper scope and interpretation." *United States v. North*, 2007 WL 1630366, *1 (D. Conn. June 5, 2007). For these reasons, the motion is granted.

---

[3] The testimony the plaintiff seeks to elicit from Mr. Cooper is not limited to his statements in the recording, but also includes other relevant issues. Therefore, the primary purpose of calling him is not to "elicit otherwise impermissible evidence through impeachment." *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 761 (5th Cir. 2008).

### D. Exclusion of Any Reference to Preparation Time for Steve Dunn Deposition

SSAB asks the Court to bar MM Steel from introducing evidence of or referring to the fact that SSAB's counsel spent five days preparing SSAB employee Steve Dunn for his September 5, 2013 deposition. Because the Court is of the opinion that the limited probative value of Dunn's preparation time is outweighed by its prejudicial effect against SSAB, the motion is granted.

### E. Exclusion of Plaintiff's Dual Distribution Theory of Horizontality

The defendants ask the Court to prohibit MM Steel from arguing a dual distribution theory of horizontality. Additionally, at the pretrial hearing, defendants continued to argue that this is not a proper *per se* case. The Court addresses both contentions.

According to MM Steel, "[t]his case involves a *per se* illegal horizontal restraint emanating from two steel-distributor competitors (defendants Reliance/Chapel and American Alloy) agreeing to cut off fellow steel-distributor MM Steel's access to supply of carbon steel plate." Pursuant to that agreement, the two steel-distributor competitors allegedly enlisted the assistance of the three mill defendants (and others) to cut off MM Steel's access to carbon steel plate. To effect this agreement, the conspiring parties agreed to boycott MM Steel. The ultimate goal of the agreement was to put MM Steel out of business; that goal was achieved when MM Steel shuttered its doors in August 2013.

It is settled law that "[a] claim under section 1 of the Sherman Act requires proof of three elements: that the defendant (1) engaged in a conspiracy (2) that restrained trade (3) in a particular market." *Spectators' Commc'n Network Inc. v. Colonial Country Club*, 253 F.3d 215, 220 (5th Cir. 2001). A group boycott is the type of concerted action that may violate section 1. *Id.* at 222. According to the Supreme Court, group boycotts are best described as "joint efforts by

a firm or firms to disadvantage competitors by either directly denying or persuading or coercing suppliers or customers to deny relationships the competitors need in the competitive struggle." *Northwest Wholesale Stationers, Inc. v. Pacific Stationery and Printing Co.*, 472 U.S. 284, 294 (1985) (internal quotation omitted); *see also Spectators'*, 253 F.3d at 221. Only horizontal boycotts can be *per se* violations of the Sherman Act. *Spectators'*, 253 F.3d at 223. Conspiracies between suppliers and distributors are treated as horizontal when the conspiracy originates amongst the distributors. *See H & B Equip. Co., Inc., v. Int'l Harvester Co.*, 577 F.2d 239, 245 (5th Cir. 1978); *see also NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128, 135 (1998) (holding that a group boycott "in the strongest sense" is one in which a "group of competitors threatened to withhold business from third parties unless those third parties would help them injure their directly competing rivals"). "If there is a horizontal agreement between A and B, there is no reason why others joining that conspiracy must be competitors." *United States v. MMR Corp. (LA)*, 907 F.2d 489, 498 (5th Cir. 1990).

As outlined above, the Supreme Court and Fifth Circuit have both held that when two competing distributors conspire to harm a mutual competitor, and persuade suppliers to join the effort by not supplying that distributor, then a *per se* violation has occurred. That is one theory of liability MM Steel has advanced in this litigation and it was under that theory (and that theory only) that this Court denied defendants' motions for summary judgment on the Sherman Act claim. Accordingly, the defendants' motion regarding plaintiff's dual distribution theory is granted and defendants' argument that this is not a proper *per se* case is rejected.

      **F.    Exclusion of Any Reference to Spoliation**

Nucor asks the Court to exclude any reference to MM Steel's contention that Nucor committed spoliation with respect to a September 1, 2011 voicemail on the cell phone of Nucor

Executive Vice President Joseph Stratman. Because MM Steel's contention is unsupported by any evidence, the motion is granted.

### III. PLAINTIFF'S MOTIONS

#### A. Exclusion of Any Reference to Prior State Court Litigation

MM Steel asks the Court to exclude any reference to the merits of the settled lawsuit that was filed against it by Reliance/Chapel. The defendants maintain that the reaction of various companies to the emergence of MM Steel, MM Steel's actions and the actions of its principals are relevant. The Court is of the opinion that the lawsuit itself is irrelevant, but that the actions of MM Steel and its principals have some relevance. However, the Court is wary of the jury being overwhelmed by the potentially voluminous evidence of the actions underlying the settled claims and the discussion of those actions extending beyond the issues for which they are relevant. Therefore, the Court will allow the parties to elicit testimony regarding the circumstances in which Hume and Schultz left Chapel, but will not allow the introduction of physical evidence related to the lawsuit, its underlying claims or its outcome.

#### B. Exclusion of Untimely Disclosed Evidence

MM Steel asks the Court to exclude certain documents produced by Nucor and SSAB. It further asks that an expert designated by SSAB be barred from testifying as an expert. MM Steel believes the document production and the expert designation were untimely. Because the plaintiff was arguably on notice of some of the information contained in the produced documents, the production occurred while discovery was ongoing and the produced documents are highly relevant, the Court denies the motion as to the documents. Because the plaintiff was on notice that a credit expert would be designated and any delay was harmless, the Court also denies the motion as to the expert designation.

### C. Exclusion of Emails Containing Profane Language

MM Steel asks the Court to bar defendants from introducing into evidence or referring to emails sent by MM Steel employees that contain profane language. MM Steel believes the emails are both irrelevant and prejudicial. Because the Court agrees that the emails are not relevant, the motion is granted. The defendants' argument that MM Steel is asking "for a one-way pass" is unavailing because no defendant has made a counterclaim for business disparagement.

### D. Exclusion of Any Reference That Plaintiff Should or Will Sue Other Parties

MM Steel asks the Court to bar any reference that the plaintiff should have or will sue parties other than the defendants. The motion is granted.

### E. Exclusion of Any Reference to *Noerr-Pennington* Doctrine and Allegedly Released Claims

MM Steel asks the Court to bar any reference to contentions that were not timely pled. Essentially, the plaintiff asks the Court to reaffirm its denial of Reliance/Chapel's Motion for Leave to Amend Answer (Docket No. 182). MM Steel's motion is granted.

## IV. CONCLUSION

The above rulings are applicable to the parties, their attorneys and their witnesses.

It is so **ORDERED.**

SIGNED on this 16th day of December, 2013.

_____
Kenneth M. Hoyt
United States District Judge