IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MM STEEL, L.P., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| RELIANCE STEEL & ALUMINUM CO., | § | |
| CHAPEL STEEL CORP., AMERICAN | § | CIVIL ACTION NO. 4:12-CV-01227 |
| ALLOY STEEL, INC., ARTHUR J. | § | |
| MOORE, JSW STEEL (USA) INC., NUCOR | § | |
| CORP. & SSAB ENTERPRISES, LLC | § | |
| D/B/A SSAB AMERICAS, | § | |
| | § | |
| Defendants. | § | |

## NUCOR'S TRIAL BRIEF TO EXCLUDE IRRELEVANT, SUGGESTIVE, AND PREJUDICIAL QUESTIONS

Nucor files this trial brief in support of its position, as expressed in open court on February 24 and 25, 2014, that Plaintiff should not be permitted to ask witnesses questions about whether that witness considers various alleged actions to be "ethical," "proper," "appropriate," or "legal," or whether that witness has seen those actions occur in their "experience." These questions are irrelevant, suggestive, and prejudicial.

### FACTS

Plaintiff asked Dennis Smith, Vice President of Purchasing and Traffic at American Alloy, the following questions (emphasis added throughout):

- "**Q.** Giving a steel mill a choice whether to do business with American Alloy or with a new competitor is not *ethical*, in your business career -- experience, is it? **A.** I've never done that. **Q.** It's not *proper*, in your business experience, is it? **A.** It wouldn't be something that I would do, no." Tr. Trans. 1512.

- "**Q.** Now, just as you said with Chapel, it would not be *appropriate*, in your view as a businessman, Mr. Smith, if as Mr. Moore says he was planning to do, American Alloy went to JSW and said, If you support MM Steel, we will not support JSW? That would not be appropriate in your belief, would it? **A.** Repeat that again. **Q.** Sure. Just like you said with Reliance Chapel -- **A.** What? What? I'm sorry. **Q.** If Mr. Moore did exactly what he was planning to do in this e-mail, and he went to JSW and said, If you give business to MM Steel, we will cut off our business with you, JSW, that would not be *appropriate*, in your belief, would it, Mr. Smith? **A.** He didn't say he was going to cut off his business. He said he was going to quit supporting them. There's a lot more than we do besides just doing business. We do support them other ways." Tr. Trans. 1508-09.

- "**Q.** Because steel service centers don't threaten steel mills with punishing them if they do service with another service center? At least they're *not supposed to*; right? **A.** We don't, no." Tr. Trans. 1479.

- "**Q.** That sounds awful *suspicious*, doesn't it? **A.** I don't know. Like I said, this is not my writing. I don't know what went on." Tr. Trans. 1480.

- "**Q**. Did you think, Well, I don't know if that's *legal*? **A.** I didn't think wow anything." Tr. Trans. 1493.

- "**Q.** And as far as you know -- and you're not a lawyer, but it probably wouldn't be *lawful* either, would it? **A.** I don't know. You could tell me that." Tr. Trans. 1512.

Plaintiff asked similar questions of Arlene Waters, Senior Director of Procurement/Business Development at Texas Steel Processing. The Court sustained an objection to a question about her opinion, Tr. Trans. 1753-55, but permitted the following question that was also objectionable:

- "**Q.** Now, *in your experience*, have the companies, the service centers you have worked for, including Texas Steel Processors and Ryerson, have they, to your knowledge, ever told the steel mills who the steel mills should or shouldn't sell steel to? MR. GERSCH: Objection, same basis, Your Honor. THE COURT: Overruled. THE WITNESS: No." Tr. Trans. 1756 (emphasis added).

**ARGUMENT**

These questions are irrelevant, suggestive, and prejudicial. They are especially prejudicial given the length of time between the testimony and the jury instructions. The Supreme Court and the Fifth Circuit, in case after case, have made clear that the specific conduct

MM asked about—a customer telling a supplier that it must make a "choice" whether to keep selling to that customer, or sell to someone else—*is not illegal*. *See Bus. Elecs. Corp. v. Sharp Elecs. Corp.*, 485 U.S. 717 (1988) (rejecting *per se* antitrust liability for manufacturer's termination of dealer after receiving "ultimatum" that competing dealer "would terminate his dealership unless [manufacturer] ended its relationship with [plaintiff] within 30 days"); *Viazis v. Am. Ass'n of Orthodontists*, 314 F.3d 758, 764 n.8 (5th Cir. 2002) (holding that "avoid[ing] losing the business of disgruntled dealers" is a "legitimate reason for terminating a relationship with a dealer"). "[I]t is well-established . . . that a manufacturer's exclusion of a buyer-distributor in response to another buyer-distributor's complaints is insufficient as a matter of law to establish conspiracy." *Abraham v. Intermountain Health Care Inc.*, 461 F.3d 1249, 1259 (10th Cir. 2006).[1]

Given that a customer may *legally* give a supplier a choice, it is suggestive and confusing to the jury to ask whether a witness believes such conduct to be "ethical," "proper," "appropriate," or "legal." These questions usurp the role of the Court to instruct the jury on the applicable standard. MM's approach is calculated to suggest to the jury that what is important in this case is, for example, whether Dennis Smith believes giving a supplier a "choice" is unethical. That testimony is not important. The claims made in this litigation are not whether

---

[1] *Accord Euromodas, Inc. v. Zanella, Ltd.*, 368 F.3d 11, 20 (1st Cir. 2004) (affirming summary judgment where the evidence suggested "that the manufacturer took sides between two dealers and chose the more lucrative of them . . . a legitimate, independent reason for terminating the less desirable distribution relationship"); *National Marine Electronic Distributors, Inc. v. Raytheon Co.*, 778 F.2d 190, 192 (4th Cir. 1985) (holding no Sherman Act violation where dealers made explicit "threats that [they] would cease doing business with Raytheon if the relationship with [plaintiff] was not terminated"); *The Jeanery, Inc. v. James Jeans, Inc.*, 849 F.2d 1148, 1158 (9th Cir. 1988) (affirming summary judgment for manufacturer who terminated distributor after being told by another distributor, "if you sell him, I'm not going to buy the product").

Defendants' alleged actions were "ethical" or "proper." The purpose of this trial is not to adjudicate Dennis Smith's definition of "appropriate."

Likewise, questions asking whether or not a witness has observed a customer posing a choice to a supplier before in her "experience" serve only to disorient the jury. These questions imply that because Arlene Waters has never observed a choice from a customer to a supplier in her personal "experience," if such a choice did occur it must involve wrongdoing. These tactics only confuse the jury from its true task, which is not to evaluate Arlene Waters' "experience," but rather to consider the facts presented based on the charge given by the judge at the end of evidence.[2]

Moreover, questions about a witness' opinion on what is "ethical," "proper," or "appropriate" cannot be relevant given the well-established precedent allowing choices from customers to suppliers. If settled caselaw deems this conduct legal, then these other undefined standards proposed in MM's questions must have no bearing on this lawsuit. That a witness may erroneously think such action is illegal is certainly irrelevant. *See Askanase v. Fatjo*, 130 F.3d 657, 673 (5th Cir. 1997) (there is "only one spokesman of the law" at trial, "who of course is the judge" (internal quotation marks omitted)).

Finally, Plaintiff's questioning also raises a prudential concern—allowing MM's counsel to examine each witness on irrelevant, suggestive, and prejudicial topics will only prolong an already lengthy trial.

## CONCLUSION

For the foregoing reasons, Nucor respectfully renews its request that the Court (i) strike the testimony of Dennis Smith and Arlene Waters elicited in response to the questions quoted

---

[2] If these topics were relevant, so too would the "ethics" training a witness has received, the extent and representativeness of that witness's "experience," and so on.

above; (ii) bar Plaintiff from further questioning witnesses about whether they consider any alleged actions to be ethical, proper, appropriate, or legal; and (iii) give the jury a curative instruction that the perceptions of both previous and future witnesses about the legality, ethics, or propriety of any alleged actions should not be considered.

February 26, 2014         Respectfully submitted,

            /s/ Robert J. Katerberg
           Robert J. Katerberg
           (Attorney-In-Charge; Admitted *Pro Hac Vice*)
           David P. Gersch (Admitted *Pro Hac Vice*)
           Donna E. Patterson (Admitted *Pro Hac Vice*)
           Jason C. Ewart (Admitted *Pro Hac Vice*)
           Rosemary Szanyi (Admitted *Pro Hac Vice*)
           Andrew S. Macurdy (Admitted *Pro Hac Vice*)
           ARNOLD & PORTER LLP
           555 Twelfth Street NW
           Washington, DC 20004
           Telephone: (202) 942-5000
           Facsimile: (202) 942-5999
           Email: Robert.Katerberg@aporter.com

           S. Albert Wang (Admitted *Pro Hac Vice*)
           ARNOLD & PORTER LLP
           777 South Figueroa Street, 44th Flr
           Los Angeles, CA 90017
           Telephone: (213) 243-4000
           Facsimile: (213) 243-4199

           Walter M. Berger (Local Counsel)
           WINSTON & STRAWN LLP
           1111 Louisiana, 25th Floor
           Houston, TX 77002
           Telephone: (713) 651-2611
           Facsimile: (713) 651-2700

           Douglas R. Gunson (Admitted *Pro Hac Vice*)
           NUCOR CORPORATION
           1915 Rexford Road
           Charlotte, NC 28211
           Telephone: (704) 366-7000
           Facsimile: (704) 972-1836

           **Attorneys for Defendant Nucor Corporation**

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on February 26, 2014, the foregoing document was transmitted to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing for this filing to all registered counsel of record.

      /s/ Andrew Macurdy
      Andrew Macurdy