UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MM STEEL, LP, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 4:12-CV-1227 |
| | § | |
| RELIANCE STEEL & ALUMINUM CO., *et al*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

**I.**

The defendants, Reliance Steel and Chapel Steel, American Alloy and Arthur J. Moore, JSW Steel, and Nucor Corporation, have motioned for a directed verdict (Docket No. 496). Both the plaintiff and the defendants have rested and the case is ripe for submission to the jury. Having carefully reviewed the parties' submissions, the record and the applicable law, the Court finds and concludes as follows.

**II.**

MM Steel alleges a *per se* violation of section 1 of the Sherman Act as to all of the defendants. The defendants continue to argue that this is not a proper *per se* case. At least initially, all parties agreed that the selection of a mode of analysis—*per se* or rule of reason—is a question of law. *See, e.g.,* Defendant JSW Steel (USA) Inc.'s Motion for Summary Judgment (Docket No. 201). The defendants now argue that whether this is a *per se* case is an issue for the factfinder. *See* Defendants' Response to MM Steel's Brief on Jury Instructions (Docket No. 492). The Court disagrees. *See PSKS, Inc. v. Leegin Creative Leather Products,* 171 F. App'x 464, 466 (5th Cir. 2006) (holding that the determination of whether a case can proceed on a *per*

*se* basis is entirely a question of law) (reversed on other grounds); *see also Stop & Shop Supermarket Co. v. Blue Cross & Blue Shield of R.I.*, 373 F.3d 57, 61 (1st Cir. 2004) ("Whether a plaintiff's alleged facts comprise a per se claim is normally a question of legal characterization that can often be resolved by the judge on a motion to dismiss or for summary judgment.").

### III.

"Section 1 of the Sherman Anti-Trust Act, 15 U.S.C. § 1, provides: 'Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal.'" *Tunica Web Advert. V. Tunica Casino Operators Ass'n, Inc.*, 496 F.3d 403, 409 (5th Cir. 2007). It is well-settled that "[a] claim under section 1 of the Sherman Act requires proof of three elements: that the defendant (1) engaged in a conspiracy (2) that restrained trade (3) in a particular market." *Spectators' Commc'n Network Inc. v. Colonial Country Club*, 253 F.3d 215, 220 (5th Cir. 2001).

"A necessary ingredient of any section 1 conspiracy is a showing of concerted action on the part of the defendants." *Tunica*, 496 F.3d at 409 (citing *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 761 (1984)). A group boycott is the type of concerted action that may violate section 1. *Spectators'*, 253 F.3d at 222. Group boycotts are best described as "joint efforts by a firm or firm to disadvantage competitors by either directly denying or persuading or coercing suppliers or customers to deny relationships the competitors need in the competitive struggle." *Northwest Wholesale Stationers, Inc. v. Pacific Stationery and Printing Co.*, 472 U.S. 284, 294 (1985). Only horizontal boycotts[1] can be *per se* violations of the Sherman Act. *Tunica*, 496 F.3d at 412 (citing *NYNEX*, 525 U.S. at 135). Conspiracies between suppliers and distributors are treated as horizontal when the conspiracy originates among the distributors. *See*

---

[1] A horizontal group boycott involves an agreement among firms that are direct competitors. *Tunica*, 496 F.3d at 412 (citing *NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128, 135 (1998)).

*H & B Equip. Co., Inc., v. Int'l Harvester Co.*, 577 F.2d 239, 245 (5th Cir. 1978); *see also NYNEX*, 525 U.S. at 135 (stating that a group boycott "in the strongest sense" is one in which a "group of competitors threatened to withhold business from third parties unless those third parties would help them injure their directly competing rivals"). "If there is a horizontal agreement between A and B, there is no reason why others joining that conspiracy must be competitors." *United States v. MMR Corp. (LA)*, 907 F.2d 489, 498 (5th Cir. 1990).

However, simply labeling an alleged agreement a "group boycott," or a conspiracy as "horizontal," does not necessarily render the agreement *per se* unlawful. *Tunica*, 496 F.3d at 414 (citing *Northwest*, 472 U.S. at 295)). "To justify a *per se* prohibition a restraint must have manifestly anticompetitive effects and lack any redeeming virtue." *Id.* (quoting *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 886 (2007)). The Supreme Court "has long held that certain concerted refusals to deal or group boycotts are so likely to restrict competition without any offsetting efficiency gains that they should be condemned as *per se* violations of § 1 of the Sherman Act." *Northwest*, 472 U.S. at 290.

If a particular alleged group boycott is not of the type that courts have previously found to have manifestly anticompetitive effects, the district court must examine three factors to determine whether a group boycott merits *per se* treatment. *Id.; see also Tunica*, 496 F.3d 414-15. Before allowing a case to proceed as a *per se* violation, the district court must analyze: (1) whether the boycotting firms possess a dominant position in the relevant market; (2) whether the boycott cut off access to an element necessary for the boycotted firm to compete; and (3) whether there exist plausible arguments concerning procompetitive justifications regarding the boycotters' conduct. *Tunica*, 496 F.3d at 414-15. Although inquiry must be made as to each

element, "[a] concerted refusal to deal need not necessarily possess all of these traits to merit *per se* treatment." *Id.* at 414 (quoting *Northwest*, 417 U.S. at 295).

## IV.

Implicit in the summary order denying the defendants' Rule 56 motions (Docket No. 323), and now made explicit, the Court holds that the plaintiff has properly alleged and established that the defendants' group boycott, if proved, amounts to *per se* violation of section 1 of the Sherman Act. The Court is of the opinion that the type of group boycott alleged here is factually analogous to the type of group boycotts that have been previously found to constitute *per se* violations, thereby providing grounds for this case to proceed *per se*. *See, e.g., Klor's, Inc. v. Broadway-Hale Stores, Inc.*, 359 U.S. 207 (1959). Moreover, the Court finds that at least one of the *Tunica* factors cuts in the plaintiff's favor, thereby providing an additional, independent basis for permitting the case to proceed *per se*.

The Court is also of the opinion that the plaintiff has presented legally sufficient evidence as to each defendant whereby the factfinder could reasonably conclude that Reliance/Chapel and American Alloy and Arthur Moore conspired to persuade, induce or coerce certain steel mills, including JSW and Nucor, not to sell steel plate to MM Steel, and that JSW and Nucor in fact joined that conspiracy. Furthermore, the Court finds the plaintiff has introduced legally sufficient evidence demonstrating the existence of antitrust damages and that it suffered an antitrust injury. Finally, the Court is of the opinion that the plaintiff has offered evidence sufficient for the jury to find that JSW breached its contract with MM Steel.

**V.**

For the foregoing reasons, the Court DENIES, without prejudice, the defendants' motion for a directed verdict. The case will be submitted to the jury.

**It is so ORDERED.**

SIGNED on this 21st day of March, 2014.

_____
Kenneth M. Hoyt
United States District Judge